**People of the State of Illinois, Appellee, v. Home Real Estate Improvement Corporation et al., School District No. 88 et al., Appellants.**

**Gen. No. 42,366.**

Heard in the first division of this court for the first district at the December term, 1942. Opinion filed December 2, 1942.

Thomas Tighe and Charles Liebman, both of Chicago, for appellants; Thomas Tighe, Charles Liebman and Alice M. Bright, all of Chicago, of counsel.

Thomas J. Courtney, State's Attorney, for apellee; Marshall V. Kearney, Jacob Shamberg and Neal J. McAuliffe, Assistant State's Attorneys, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

The People of the State of Illinois, by Thomas J. Courtney, State's Attorney of Cook county, brought suit to foreclose for failure to pay general taxes on 12 parcels of real estate. A decree was entered and the property sold. The Trustees of Schools of Township 39, School Dist. No. 88, and Township High School District No. 209 sought to intervene and to have the sale disapproved. The court denied their motions and they appealed to the Supreme Court. Upon consideration, the cause was transferred to this court.

The Supreme Court in its opinion transferring the case (*The People v. Real Estate Imp. Corp.*, 379 Ill. 536), said: "Taxes were unpaid on part or all of the property for the years 1929 to 1939, inclusive, in the amount of $28,675.22, of which $16,647.08 was principal and $12,038.14 was interest and penalties. A decree foreclosing the tax lien was entered October 30, 1941. November 25, 1941, a sale was had under that decree and one Henry Aldeen bid in the property for the amount of $12,000. A report of sale was made and the sale approved by the court January 13, 1942." The School District and the High School, the court said, would get a part of the proceeds of the sale, and further said: "After the sale was had, appellants asked leave to file written objections to the confirmation of the sale on the ground the amount of the bid was inadequate. They admitted that they could not

produce a higher bidder at another sale and stated that they had no funds and could not purchase it themselves. The judge denied the motion and held that appellants were not interested parties to the proceedings, that they were beneficiaries only of the proceeds of the sale when and if there should be any; and that the State's Attorney represented the people of the State of Illinois, in whom the law vests the right of foreclosure. . . .

"Appellants base their alleged right to receive notice and file objections on the claim that since they would receive part of the taxes when collected, they were beneficial owners. To support this claim, they rely on *People v. Straus,* 355 Ill. 640. In that case the county was the purchaser at the tax foreclosure sale and this court held that the delinquent taxpayer could not question its right to buy. It was said that the county bought and held the property as agent for the various taxing bodies.

"There is nothing in the *Straus case* which puts a duty on the county to bid at the foreclosure sale, nor is there any statement that a deficiency judgment should be obtained against the property owner. That case does not state that the various taxing bodies are proper parties plaintiff.

"The statute (Ill. Rev. Stat. 1941, chap. 120, par. 697 [Jones Ill. Stats. Ann. 119.713]) provides that the suit shall be brought in the name of the people of the State of Illinois and the State's Attorney is the proper party to institute the suit."

After the suit was pending in the Supreme Court and the briefs had all been filed, the opinion filed, and a rehearing denied, the Supreme Court, June 11, 1942, filed an opinion in *The People v. Anderson,* 380 Ill. 158, which involved a foreclosure for failure to pay general taxes and special assessments. A complaint was filed by the State's Attorney. One of the contentions was that the Village of Lansing which had levied special

assessments and issued bonds involved in the suit, had not properly performed its function as trustee for the bondholders and "that the sale price was so grossly inadequate as to be fraudulent," and "To establish a market value [of the property] defendants introduced the testimony of two real estate experts. It is conceded the testimony of both these witnesses was based entirely on the immediate use of the vacant property for building purposes"; that the value they placed on the lots was many times more than the property sold for. The court continuing said: "Admittedly, at a sale of this sort the full market price cannot be procured unless some one really wants the land, but it is insisted the facts shown by the record establish that the prices at which the property was sold are so grossly inadequate as to shock the conscience, and that where the property is sold at such a low price, this fact alone is sufficient to require the chancellor to refuse to approve the sale. . . .

"The primary purpose of tax foreclosure proceedings is to clear up hopeless tax delinquency and to put the property again on a taxpaying basis. The statute is remedial. (*People v. Straus,* 355 Ill. 640.) It was never intended that the sale be required to be for the full amount of the lien foreclosed. (*French v. Toman,* 375 Ill. 389.)" The decree approving the sale was affirmed. The court said that the rule was firmly established that a chancellor possesses a broad discretion in approving or disapproving such a sale and that his discretion would not be disturbed unless there was a clear abuse of discretion. And continuing: "The requirements of the statute as to publication having been met in this instance, there being no evidence in the record of any fraud in conducting the sale herein or of any other irregularity in the sale, and the defendants having produced no evidence as to what price might be bid should a second sale be held or that any greater proceeds would be realized at such sale, it

cannot be said that the chancellor abused his discretion in approving the sale.''

In the instant case there was no contention that all of the requirements of the law were not followed—the property was advertised, copies of the publication were sent to real estate men, banks and persons normally interested in bidding, and counsel for the schools, on the hearing before the court, said: ''There was no physical stoppage to anybody making a bid. I raise no question of any of the formal technicalities herein about the sale.'' We think the entire proceedings disclose the fact that the law was in all respects complied with; that the property was sold to the highest and best bidder for cash and, as said by the Supreme Court in the *Anderson case,* there is no showing ''as to what price might be bid should a second sale be held or that any greater proceeds would be realized at such sale, it cannot be said that the chancellor abused his discretion in approving the sale.''

The orders of the circuit court of Cook county are affirmed.

*Orders affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.